Keith Altman, Esq.
**THE LAW OFFICE OF KEITH ALTMAN**
30474 Fox Club Drive
Farmington Hills, Michigan 48331
keithaltman@kaltmanlaw.com
Telephone: (248) 987-8929

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANKUR CHABLANI;

     *Plaintiff*,

v.

CALIFORNIA INSTITUTE OF
INTEGRAL STUDIES, by and
through its Board of Trustees;
CALIFORNIA COLLEGE OF THE
ARTS, by and through its Board of
Trustees; and DOES 1-20,

     *Defendants*.

Case No.  3:25-cv-6587

**PLAINTIFF'S OPPOSITION TO DEFENDANT CALIFORNIA INSTITUTE**

**OF INTEGRAL STUDIES MOTION TO DISMISS THE AMENDED**

**COMPLAINT [ECF 047]**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................iii

INTRODUCTION ...........................................................................................................1

FACTUAL BACKGROUND..............................................................................................1

STANDARD OF REVIEW ...............................................................................................3

ARGUMENT..................................................................................................................3

    I.   The Amended Complaint Adequately States a Claim for Relief Against CIIS for Their Violations of Title IX ..................................................................................3

    II.  The Amended Complaint Adequately States a Claim for Relief Against CIIS for Negligence......................................................................................................7

    III. The Amended Complaint Adequately States a Claim for Relief Against CIIS for Breach of Contract ......................................................................................8

    IV. The Amended Complaint Adequately States a Claim for Relief Against CIIS for Defamation ...............................................................................................10

    V.  The Amended Complaint Adequately States a Claim for Relief Against CIIS for their Violation of California's Unruh Civil Rights Act ...............................13

    VI.  The Doe Defendants Inclusion is Proper at the Current Procedural Posture of the Lawsuit.................................................................................................13

    VII.  Further Leave to Amend Should Not be Required – However it Should be Allowed if Deemed Necessary by the Court .......................................................13

CONCLUSION.............................................................................................................14

CERTIFICATE OF SERVICE..........................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...3

*Austin v Univ of Or*, 925 F3d 1133 (CA 9, 2019) .................................................5, 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .........................................................................................................................3

*Brown v. Arizona*, 82 F.4th 863, 878 (9th Cir. 2023)...............................................5

*Doe v. Purdue Univ.*, 928 F.3d 652, 668–69 (7th Cir. 2019)....................................5

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998) ....................................................................................................3

*Hardin v. Mendocino Coast Dist. Hosp.*, No. 17-cv-05554-JST, 2018 U.S. Dist. LEXIS 205334, 2018 WL 6331009, at *4 (N.D. Cal. Dec. 4, 2018) ..................11

*Harper v. Lugbauer*, No. 11-cv-01306-JW, 2011 U.S. Dist. LEXIS 148602, 2011 WL 6329870, at *4 (N.D. Cal. Nov. 29, 2011) ....................................................12

*Jackson v. AEG Live, Inc.*, 233 Cal. App. 4th 1156, 1173, 183 Cal. Rptr. 3d 394 (2015) .....................................................................................................................7

*Joel v. Valley Surgical Ctr.*, 68 Cal. App. 4th 360, 372, 80 Cal. Rptr. 2d 247 (1998) ..........................................................................................................................10

*Kashmiri v. Regents of Univ. of California*, 156 Cal. App. 4th 809, 823-24, 67 Cal. Rptr. 3d 635 (2007).................................................................................................8, 9

*Laps v Leland Stanford Junior Univ*, ___F Supp 3d___; 2026 U.S. Dist. LEXIS 10419, at *10 (ND Cal, Jan. 20, 2026) ....................................................10, 11, 12

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ..................................................................................................................................3

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) .....3

*Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, 124 Cal. Rptr. 3d 256, 250 P.3d 1115 (2011)....................................................................................................8

*Okun v. Superior Ct.*, 29 Cal. 3d 442, 458, 175 Cal. Rptr. 157, 629 P.2d 1369 (1981) ............................................................................................................................11

*Ringler Assocs. Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1179, 96 Cal. Rptr. 2d 136 (2000)......................................................................................................10

*Schaeffer v Gregory Village Partners, LP*, 105 F Supp 3d 951, 961 (ND Cal, 2015) ..............................................................................................................................7

*Schwake v Ariz Bd of Regents*, 967 F3d 940, 946 (CA 9, 2020)...........................4, 6

*Velasquez v Senko*, 643 F Supp 1172 (ND Cal, 1986) ............................................13

*Zumbrun v Univ of Southern Cal*, 25 Cal App 3d 1; 101 Cal Rptr 499 (1972) ........9

*Zumbrun v. Univ. of S. California*, 25 Cal. App. 3d 1, 10, 101 Cal. Rptr. 499 (1972) ..............................................................................................................................8

**Statutes**

20 U.S.C. § 1681(a) ...................................................................................................3

20 USCS § 1681 .......................................................................................................4

Cal. Civ. Code § 45...................................................................................................12

**Rules**

Fed. R. Civ. P. 12(b)(6) .............................................................................................3

Fed. R. Civ. P. 15(a) .................................................................................................13

Fed. R. Civ. P. 8(a) ....................................................................................................3

NOW COMES Plaintiff Ankur Chablani, by and through his attorneys, The Law Office of Keith Altman, and for his Opposition to Defendant California Institute of Integral Studies ("CIIS"), respectfully states as follows:

## INTRODUCTION

This case arises from CIIS's deeply flawed handling of a sexual misconduct allegation against a male doctoral student—an investigation and adjudication that ignored exculpatory evidence, denied Plaintiff the procedural protections CIIS promises its students, and resulted in expulsion and a damaging public transcript notation. Plaintiff alleges that CIIS acted with gender bias, deviated from its own policies, and failed to conduct a fair and diligent investigation. These allegations state viable claims under Title IX and California law.

CIIS's motion improperly asks the Court to resolve factual disputes, draw inferences against the Plaintiff, and accept CIIS's version of events. Rule 12(b)(6) does not permit such an approach. Because Plaintiff's allegations are more than sufficient to state claims for relief, the motion should be denied.

## FACTUAL BACKGROUND

Plaintiff Ankur Chablani ("Plaintiff") is a doctoral candidate at CIIS who, at all relevant times, was completing a required pre-doctoral internship at Defendant California College of the Arts ("CCA") as part of CIIS's clinical training program. Am. Compl. ¶¶ 9–10. During this internship, Plaintiff developed a friendship with a CCA student, Jane Doe, which evolved over several weeks through mutual acquaintances and shared time at the Multicultural Center. *Id*. ¶¶ 11–15. On March 4, 2024, the two spent the afternoon and evening together—visiting a bar, a park, a restaurant, and ultimately Plaintiff's apartment—where they engaged in consensual

1

sexual activity. *Id*. ¶¶ 26–57. The next morning, Jane Doe exchanged friendly text messages with Plaintiff, thanking him for the prior evening and responding positively to a photograph he sent. *Id*. ¶¶ 61–64.

Three days later, Jane Doe reported the encounter as non-consensual. *Id.* ¶ 66. Plaintiff immediately cooperated with CCA and CIIS officials, meeting on March 11, 2024 with CCA Human Resources and CIIS Dean of Students Shedrick McClendon, where he presented contemporaneous evidence demonstrating consent. *Id.* ¶ 69. Despite this evidence, CCA terminated Plaintiff's internship on March 19, 2024. *Id.* ¶ 70.

On March 26, 2024, CIIS notified Plaintiff that it would conduct its own disciplinary process. *Id*. ¶ 71. Although the allegations involved sexual misconduct—a category CIIS ordinarily processes under Title IX—CIIS informed Plaintiff it would not apply Title IX procedures, including the live hearing and cross-examination protections that would have allowed Plaintiff to challenge credibility determinations. *Id.* ¶¶ 72–73. Plaintiff, through counsel, raised concerns about procedural irregularities and the failure to consider exculpatory evidence. *Id*. ¶ 74. Nevertheless, CIIS issued an investigative report on May 15, 2024 and expelled Plaintiff on June 11, 2024, placing a damaging public notation on his transcript. *Id*. ¶¶ 75–76. His appeal was denied on June 27, 2024. *Id*. ¶ 77.

As a result, Plaintiff, who has invested approximately $200,000 in his doctoral education, lost his internship, was prevented from completing required clinical hours, suffered reputational harm, and now faces significant barriers to completing his degree and entering his profession. *Id*. ¶¶ 78–79.

2

**STANDARD OF REVIEW**

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008); Fed. R. Civ. P. 12(b)(6). Rule 8 requires that a complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief". Fed. R. Civ. P. 8(a). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

**ARGUMENT**

I.    **The Amended Complaint Adequately States a Claim for Relief Against CIIS for Their Violations of Title IX**

Title IX provides, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX is enforceable through an implied right of action in which monetary damages are available. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998). To state a Title IX claim, a plaintiff must plead that: (1) the defendant educational

3

institutional receives federal funding; (2) the plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination under any education program or activity, and (3) the latter occurred on the basis of sex. 5 Here, Schwake alleged that the University receives federal funding. *Schwake v Ariz Bd of Regents*, 967 F3d 940, 946 (CA 9, 2020).

There is no contention that CIIS is a recipient of federal fundings. Instead, Defendant CIIS states that Title IX does not apply because it did not have substantial control over Plaintiff during the alleged misconduct. This argument is both factually incorrect and legally premature.

Title IX prohibits discrimination on the basis of sex in any education program or activity receiving federal financial assistance. 20 USCS § 1681.

CIIS acknowledges it's Title IX responsibilities through its policies and procedures**. [Exhibit A].**

Plaintiff's internship at CCA was not optional—it was a required component of his CIIS doctoral program. CIIS approved the placement, coordinated with CCA, and supervised Plaintiff's progress. The internship program at CCA bears the characteristics of an 'education program or activity' because it is affiliated by agreement with CIIS, provides supervision of practice, and delivers essential training for students seeking a graduate degree in psychology, and is an essential part of a student obtaining a degree from CIIS. The internship at CCA cannot be separated from Plaintiff's CIIS education, they are one and the same. As such, CIIS did have adequate control over the educational context in which Plaintiff met Jane Doe.

CIIS's involvement in the disciplinary process further demonstrates its control over Plaintiff as a student. If CIIS truly lacked control, it would have had no basis to investigate or discipline Plaintiff at all. CIIS Dean of Students Shedrick McClendon participated in the initial meeting about the allegations on March 11,

2024, showing CIIS's immediate involvement in addressing the complaint. CIIS went as far as to conduct their own investigation. If it did not have control, what was the purpose of this investigation as it would have no ability for resolution? Further, whether CIIS had the level of control required is a fact-intensive inquiry inappropriate for dismissal. *Brown v. Arizona*, 82 F.4th 863, 878 (9th Cir. 2023).

Let's look further into the follow-up investigation. CIIS claimed it would not follow Title IX procedures; this unilateral decision cannot shield it from Title IX liability.

Plaintiff has adequately pled facts showing that gender bias was present. CIIS made unsupported credibility determinations favoring the female complainant without allowing Plaintiff to challenge those determinations. While it is within understanding that an individual may later regret some life choices that they made, such as engaging in consensual sexual activity with another person, that does not negate the consent given at the time. Nor does it give way to a Title IX violation when consent is "revoked" days after the interaction. That is not how consent works. To state that it is, or should be, would place the entirety of our consent and abuse laws into question. CIIS's disciplinary proceedings were motivated by gender bias and resulted in an erroneous outcome.

In *Austin v. Univ. of Oregon*, the court held that allegations of procedural irregularities combined with facts suggesting gendered assumptions state a plausible Title IX claim. *Austin v. Univ. of Oregon*, 925 F.3d 1133 (9th Cir. 2019). Courts outside of the Ninth Circuit have also provided some valuable insight recognizing that pro-complainant bias can constitute sex bias where the complainant is female and the respondent is male. *Doe v. Purdue Univ.*, 928 F.3d 652, 668–69 (7th Cir. 2019). Plaintiff's allegations mirror those found sufficient in *Austin* and *Doe v. Purdue Univ.*

The Ninth Circuit referenced the erroneous outcome and selective enforcement tests as two "general categories" of Title IX claims in this context. *Schwake v Ariz Bd of Regents*, 967 F3d 940, 947 (CA 9, 2020). Under the erroneous outcome test, "the plaintiff must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *Id.*. CIIS failed to adequately consider, including Jane Doe's enthusiastic response of "hell yeah" when invited to plaintiff's apartment, her active participation in sexual activity, her nodding agreement when asked about using a condom, and friendly text messages exchanged the following day. CIIS made unsupported credibility determinations favoring the female complainant without allowing Plaintiff to challenge those determinations through cross-examination and failed to consider Jane Doe's own statement that she often becomes distant and "cancels" men after intercourse. There is articulable doubt as to the accuracy of CIIS's determination and satisfy the erroneous outcome standard. The selective enforcement theory under Title IX asserts that "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Austin v Univ of Or*, 925 F3d 1133 (CA 9, 2019).

CIIS stating that it applied non-Title IX procedures ignores the fact that Title IX is not discretionary and that the circumstances warranted Title IX protections and that the institution's unilateral determination cannot shield it from liability. CIIS's refusal to apply Title IX procedures—while simultaneously imposing Title IX-level sanctions—also supports a selective enforcement theory.

There is a clear question of fact as to whether Defendant CIIS breached its duty under Title IX.

## II. The Amended Complaint Adequately States a Claim for Relief Against CIIS for Negligence

CIIS's position—that it owes no duty of care to a student facing life-altering allegations—is untenable. If accepted, it would mean that universities could conduct reckless, biased, or incomplete investigations without consequence.

"Actionable negligence is traditionally regarded as involving the following: (a) a legal duty to use due care; (b) a breach of such legal duty; (c) the breach as the proximate or legal cause of the resulting injury." *Jackson v. AEG Live, Inc.*, 233 Cal. App. 4th 1156, 1173, 183 Cal. Rptr. 3d 394 (2015); *Schaeffer v Gregory Village Partners, LP*, 105 F Supp 3d 951, 961 (ND Cal, 2015).

CIIS owed Plaintiff a duty of care arising from the educational relationship and its own policies. Courts recognize that universities must conduct disciplinary proceedings with due care, especially when the consequences are life-altering.

CIIS states that Plaintiff failed to establish a duty of care. However, Plaintiff clearly alleges that CIIS "owed Plaintiff a duty of care to conduct fair and diligent investigations following their own policies" and that this duty "arises from the educational relationship between Plaintiff and the institutions, as well as from the institutions' own policies and procedures."

Courts have recognized that educational institutions owe certain duties to their students, particularly in disciplinary proceedings that can have life-altering consequences. The Amended Complaint alleges specific breaches of this duty, including failing to adequately consider evidence of consent such as text messages exchanged after the encounter, making unsupported credibility determinations, and failing to consider Jane Doe's statement that she often becomes distant and "cancels" men after intercourse.

CIIS's negligent investigation and adjudication directly caused Plaintiff's expulsion, the damaging transcript notation, and the loss of his internship. These

7

consequences were not only foreseeable—they were inevitable once CIIS abandoned the procedural safeguards designed to prevent erroneous findings.

There is a clear question of fact as to whether Defendant CIIS was negligent in the handling of their investigation and dismissal of Plaintiff.

**III.   The Amended Complaint Adequately States a Claim for Relief Against CIIS for Breach of Contract**

To prevail on a breach of contract claim, Plaintiff must allege (1) that a contract existed, (2) his performance or excuse for nonperformance, (3) Defendants' breach, and (4) damages. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, 124 Cal. Rptr. 3d 256, 250 P.3d 1115 (2011). "[T]he basic legal relationship between a student and a private university is contractual in nature." *Kashmiri v. Regents of Univ. of California*, 156 Cal. App. 4th 809, 823-24, 67 Cal. Rptr. 3d 635 (2007) (citing *Zumbrun v. Univ. of S. California*, 25 Cal. App. 3d 1, 10, 101 Cal. Rptr. 499 (1972)). While CIIS is not a private university – it is a public non-profit corporation – the same analysis should apply. A contract is formed between a student and university when the student matriculates to the university and pays the required fees. *Id.* at 824. Plaintiff both applied for, accepted enrollment, enrolled and attended as a student and paid his tuition fees in full. CIIS's student handbook and Title IX policies formed part of that contract. **[Exhibit A].** [1]

Because a formal contract between a student and university is rarely prepared, "the general nature and terms of the agreement are usually implied, with specific terms to be found in the university bulletin and other publications; custom and usages can also become specific terms by implications." *Id*. at 828. But not all statements in a university's publications become contractual obligations. *Id*. at 829. Whether such statements become part of the contract, the Court looks at the

---

[1] CIIS maintains the custodian of the complete and final educational contract between CIIS and Plaintiff.

reasonableness of the parties' expectations at the time the contract was formed by looking at the totality of the circumstances. *Id*. at 831-32. "The reasonableness of the student's expectation is measured by the definiteness, specificity, or explicit nature of the representation at issue." *Id*. at 832.

CIIS's student handbook formed a binding contract between Plaintiff and CIIS, Plaintiff fulfilled his obligations under this contract, and CIIS breached the agreement by failing to correctly apply their Title IX Policy. Plaintiff relies on the prior Title IX analysis as CIIS failed to follow Title IX guidance resulting in Plaintiff's dismissal and actual damages.

CIIS's student handbook, Title IX policy, and disciplinary procedures are not aspirational guidelines—they are contractual promises. Courts have repeatedly held that when a university publishes specific procedures governing disciplinary matters, students reasonably rely on those procedures as part of the terms of their enrollment contract. *Zumbrun v Univ of Southern Cal*, 25 Cal App 3d 1; 101 Cal Rptr 499 (1972).

The breaches are numerous, including:

i. Refusing to apply Title IX procedures despite the allegations falling squarely within Title IX's scope;

ii. Denying Plaintiff a live hearing, even though CIIS's policies promise one for sexual misconduct allegations;

iii. Denying Plaintiff the right to question his accuser, a core procedural protection under CIIS's own Title IX policy;

iv. Failing to consider exculpatory evidence, including contemporaneous text messages, demeanor, and statements demonstrating consent;

v. Assigning biased or conflicted personnel, including the Dean of Students who had already participated in earlier meetings;

9

      vi.     Failing to conduct a fair, thorough, and impartial investigation, as promised in CIIS's published policies;

      vii.    Issuing a transcript notation and expulsion without following required procedural steps;

      viii.   These are not minor deviations—they are fundamental departures from the procedures CIIS promised to its students.

CIIS cannot promise students that sexual misconduct allegations will be handled under Title IX, accept federal funding conditioned on compliance with Title IX, publish Title IX procedures as binding policy, and then unilaterally decide not to follow those procedures when a male student is accused.

A party cannot escape contractual obligations by simply declaring that it will not follow them. There is a clear question of fact as to whether Defendant CIIS breached its contract with Plaintiff.

## IV. The Amended Complaint Adequately States a Claim for Relief Against CIIS for Defamation

"Defamation is an invasion of the interest in reputation." *Ringler Assocs. Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1179, 96 Cal. Rptr. 2d 136 (2000). It "involves [(1)] intentional publication of a statement of fact which is [(2)] false, [(3)] unprivileged, and [(4)] has a natural tendency to injure or which causes special damage." *Id*. "The two forms of defamation are slander or libel. Slander requires an oral utterance; libel requires a [written] publication." *Joel v. Valley Surgical Ctr.*, 68 Cal. App. 4th 360, 372, 80 Cal. Rptr. 2d 247 (1998); *Laps v Leland Stanford Junior Univ*, ___F Supp 3d___; 2026 U.S. Dist. LEXIS 10419, at *10 (ND Cal, Jan. 20, 2026).

CIIS states that Plaintiff has failed to identify specific false statements with sufficient particularity. However, Plaintiff clearly provided that CIIS made false

statements that Plaintiff committed sexual assault and that these statements were published through the notation on Plaintiff's transcript and communications regarding his termination.

This District recently noted that some courts in this District have explained that "a plaintiff must allege the 'substance of the alleged defamatory statements' and 'specifically identify who made the statements, when they were made and to whom they were made.'" *Hardin v. Mendocino Coast Dist. Hosp.*, No. 17-cv-05554-JST, 2018 U.S. Dist. LEXIS 205334, 2018 WL 6331009, at *4 (N.D. Cal. Dec. 4, 2018). Although to date, the California Supreme Court has not yet adopted this requirement. In any event, the touchstone is whether "the pleading gives notice of the issues sufficient to enable preparation of a defense." *Okun v. Superior Ct.*, 29 Cal. 3d 442, 458, 175 Cal. Rptr. 157, 629 P.2d 1369 (1981); *Laps v Leland Stanford Junior Univ*, ___F Supp 3d___; 2026 U.S. Dist. LEXIS 10419, at *10-11 (ND Cal, Jan. 20, 2026).

Defendants statements were false - the sexual encounter was consensual, as evidenced by Jane Doe's response of "hell yeah" when invited to Plaintiff's apartment, her active participation in sexual activity, her nodding in agreement when Plaintiff asked about getting a condom, and the friendly text messages exchanged the next day.[2]

CIIS published written statements—through its disciplinary findings, transcript notation, and communications to CCA and other third parties through transcript transmittal —asserting that Plaintiff engaged in "sexual assault" and "non-consensual sexual contact." These are not opinions, impressions, or ambiguous characterizations. They are explicit factual assertions that Plaintiff committed a serious criminal act.

---

[2] All evidence will be provided following a protective order being put in place.

CIIS's own March 26, 2024 letter confirms that CIIS formally categorized the allegations as "sexual assault—nonconsensual sexual contact". **[Exhibit B].** CIIS later adopted this characterization as its official finding and published it through the transcript notation and disciplinary communications. These statements are actionable as a matter of law.

Plaintiff states in no unequivocal manner that all encounters with Jane Doe were consensual and Plaintiff in no way committed sexual assault.

A transcript notation accusing a doctoral student of sexual assault is inherently injurious. It is the type of statement that "exposes any person to hatred, contempt, ridicule, or obloquy or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation". Cal. Civ. Code § 45. Courts routinely recognize that disciplinary findings of sexual misconduct are defamatory per se because they accuse the respondent of criminal conduct and professional unfitness.

Sufficient notice of the nature of the allegedly defamatory statements and why they are claimed to be false was provided, which is all that is required at the pleading stage. Defendants are in the best position as they hold all of this information in their own educational and investigative files.

The California Supreme Court has held that "less particularity is required when it appears that [the] defendant has superior knowledge of the facts, so long as the pleading gives notice of the issues sufficient to enable preparation of a defense." *Harper v. Lugbauer*, No. 11-cv-01306-JW, 2011 U.S. Dist. LEXIS 148602, 2011 WL 6329870, at *4 (N.D. Cal. Nov. 29, 2011); *Laps v Leland Stanford Junior Univ*, ___F Supp 3d___; 2026 U.S. Dist. LEXIS 10419, at *17 (ND Cal, Jan. 20, 2026). There is a clear question of fact as to whether Defendant CIIS issued and published statements resulting in the defamation to Plaintiff.

## V. The Amended Complaint Adequately States a Claim for Relief Against CIIS for their Violation of California's Unruh Civil Rights Act

Although CIIS does not specifically address the Unruh Civil Rights Act claim in its motion, Plaintiff has adequately alleged that CIIS denied him full and equal educational services and opportunities based on his gender, that CIIS's handling of the sexual misconduct allegations was substantially motivated by gender bias against males accused of sexual misconduct, and that this discriminatory treatment caused him significant harm.

These allegations are sufficient to state a plausible claim under the Unruh Civil Rights Act. As Defendant CIIS did not contest claim, they have waived the right to do so that this procedural posture of the case.

## VI. The Doe Defendants Inclusion is Proper at the Current Procedural Posture of the Lawsuit

In *Velasquez v. Senko*, the court acknowledged that while the Ninth Circuit generally disfavors the use of Doe defendants, plaintiffs in civil rights actions should be given the opportunity to identify unknown defendants through discovery unless it is clear that discovery would not uncover their identities. The court denied the motion to dismiss the Doe defendants, allowing discovery to proceed to identify the agents responsible for the alleged conduct. *Velasquez v Senko*, 643 F Supp 1172 (ND Cal, 1986).

## VII. Further Leave to Amend Should Not be Required – However it Should be Allowed if Deemed Necessary by the Court

Rule 15(a) favors amendments with "extreme liberality", provided they do not cause undue prejudice, are not sought in bad faith, and are not futile. Fed. R. Civ. P. 15(a). Plaintiff retained new counsel in 2025 which resulted in Plaintiff filing and Amended Complaint. As such, should the Court deem Plaintiff's Amended Complaint deficient, Plaintiff's new counsel kindly requests that leave

13

to amend be granted should the Court deem an amendment viable to Plaintiff's claims.

## CONCLUSION

It is unconscionable that Plaintiff be subject to the persecution and disruption to his education that Defendants maliciously caused. The Amended Complaint contains sufficient factual allegations to state plausible claims for relief on all counts against CIIS. Plaintiff has adequately alleged that CIIS maintained substantial control over the educational context, that gender bias affected the disciplinary proceedings, that CIIS breached its duties and contractual obligations, that it made false defamatory statements, and that it discriminated against plaintiff based on his gender.

For the foregoing reasons, Defendant CIIS's Motion to Dismiss should be denied.

Dated: January 29, 2026                     Respectfully submitted,

                                            /s/ Keith Altman
                                            Keith Altman, Esq.
                                            THE LAW OFFICE OF KEITH ALTMAN
                                            30474 Fox Club Drive
                                            Farmington Hills, Michigan 48331
                                            Telephone: (248) 987-8929

                                            keithaltman@kaltmanlaw.com

                                            Attorney for Plaintiff

14

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2026, I electronically filed the foregoing document with the Clerk of the Court through the CM/ECF system which sent an email notice of electronic filing to all attorneys of record.

*/s/ Keith Altman*
Keith Altman, Esq.